UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DERRICK PETROLEUM SERVICES, | § § § | |
| *Plaintiff*, | § | |
| v. | § | CASE NO. 4:14-cv-01520 |
| PLS, INC., | § § § | |
| *Defendant*. | § § | |

## PLAINTIFF'S SUMMARY OF DEPOSITION DESIGNATION OF MANGESH HIRVE

Plaintiff, Derrick Petroleum Services ("Derrick"), hereby submits Plaintiff's Summary of Deposition Designation of Mangesh Hirve ("Hirve") and offers the following summary of Plaintiff's Designation of the Deposition Testimony of Mangesh Hirve.

**A.    Hirve Joined Derrick as Head of Operations on October 11, 2011.**

Hirve is an Indian citizen, who lives in Bangalore, India. He has a college degree from IIT Bombay in Chemical Engineering. He also secured a masters in Business Administration from INSEAD in France.

Hirve has a significant and varied background with numerous companies in the energy arena. He has served as a chemical engineer and also has done sales and marketing for Gray Labs, which is a software outsourcing house. He also worked as a strategy consultant for Opus Partners, and worked for other employers during which he secured extensive experience in computer software solutions.

When Hirve joined Derrick, he assumed responsibilities for delivery of products that come out of India, including, but not limited to the M&A Database. He is currently Operations Head of Derrick. Although Hirve had significant experience working with different system

applications, and computer software packages, he admittedly learned much of what he knew about the M&A Database during the course of his employment with Derrick.

Notably, given the inception of his employment in 2011, Hirve was not involved in the initial creation and development of the M&A Database, either before PLS and Derrick entered into the MOU, or after October 3, 2009.

B.  **Hirve Recognized that PLS Provided Information Regarding the M&A Database, but Ultimately Derrick Controlled Content and Composition.**

A fair amount of Hirve's testimony focuses on his role and responsibility in overseeing content and composition of the M&A Database, including, but not limited to suggestions made by PLS. Hirve has spent a fair amount of time during his employment with Derrick making sales calls on people in different venues around the world. He recognizes that client feedback is important. Feedback from both PLS and subscribers (or customers) is generally helpful as a matter of context and perspective to assure the high quality of the M&A Database. Thus, although Derrick ultimately controlled content of the same, it sought input, insight, and suggestions from clients and PLS regarding ways to improve the product.

Along those lines, Hirve recognized that representatives of PLS, including Ronyld Wise ("Wise") and Brian Lidsky made suggestions to Derrick regarding the format and content of the database. Occasionally, but not always, suggestions were taken. In Mr. Hirve's words, "*some parts of it were used; some parts of it—most parts of it we didn't use*."[1] Indeed, Hirve recognized the need to communicate with PLS since they were the marketing agent for the U.S.—for North America. Given the relationship under the Memorandum of Understanding ("MOU"), there was a need to communicate, and cooperate, with PLS given the common business objectives, which included sharing revenue on a 50/50 basis.

---

[1] Deposition Testimony of Mangesh Hirve ("Hirve Dep.") at 20:10-15.

## C. Hirve Recognized That There was a Disagreement Between the Parties on the Subject of Ownership.

Hirve was asked a significant number of questions regarding his interpretation and understanding of the MOU during the course of his deposition. Most of these inquiries amounted to having Hirve parrot the words that were set forth in the MOU, although there were points in time where he asked his meaning and understanding regarding the same. It bears noting that (a) Hirve was not involved in the negotiations of the MOU (which preceded his arrival at Derrick by over two years); and (b) he had little or no occasion to resort to the MOU for the purpose of discharging his job responsibilities. Thus, the limited understanding that Hirve shared in that regard was generally confirmed per the language set forth in the MOU.

There is nothing in the MOU itself that addresses the subject of ownership of the M&A Database per se. Nevertheless, in April of 2012, during the course of a meeting in PLS's office in Houston, Wise apparently claimed that PLS owned fifty percent (50%) of the M&A Database. Hirve communicated this information to Yashodeep Deodhar, the owner of the Derrick, who confirmed that PLS was a marketing arm and that Derrick owned the database. It was at that time, in that context, that Hirve saw the MOU for the first time and recognized that there was a difference of opinion regarding the ownership of the M&A Database.

Indeed, Hirve confirmed that as far as his involvement was concerned, he reviewed proposed information for addition to the database, he would classify it, bag it, and examine it for the purpose of building a product out. He did not envision that PLS and Derrick would be jointly contributing information to the database. From his viewpoint, the division of revenues was based on the fact that PLS had Derrick had different responsibilities—PLS was responsible for marketing the M&A Database in North America, and Derrick was responsible for content of the same.

**D.     Hirve Testified that PLS was Derrick's Marketing Agent in North America.**

Despite Derrick's use of the term "partner" in referring to PLs, Hirve confirmed that Derrick viewed PLS as its marketing agent in North America. Hirve explained that his and Derrick's use of the term "partner" in communications was intended to convey simply that Derrick was in business with PLS. Hirve noted that Derrick used the term "partner" rather than "agent" to refer to PLS because "partner is [] basically a term that we used for a marketing agent, supplier, or vendor whom you have been working with for a considerable period of time because simple words such as marketing agent, reseller, supplier do not sound good."[2] As Hirve explained, using these terms, although they may be more precise, "doesn't help in [] sales positioning."[3]

**E.     Other Testimony in the Deposition is not Relevant to "Round 1" of the Trial.**

Given the nature of this summary, Derrick would be remiss if it did not note that there was a fair amount of questioning raised regarding the matters that presumably fall outside the scope of the issues embraced in the first phase of bifurcated that is to begin shortly. Matters pertaining to the Exit Mechanism in the MOU—to the extent Hirve has any knowledge regarding the meaning of this provision or how it worked, or whether either party breached the MOU or damages, are clearly reserved for the Second Phase of the dispute if matters progress that far. Additionally, questioning regarding other products (developed, marketed, and sold by either side), and the financial impact of the same are also out of bounds at this stage. Accordingly, since a fair amount of the deposition delved into matters that are peripheral to the issues to be immediately decided, this summary has not focused on them.

---

[2] Hirve Dep. at 94:25–95:4.
[3] Hirve Dep. at 95:12–17.

4

Finally, and additionally, questions regarding the payroll, tax implications, and even matters extending to the compensation received by Hirve are not germane to the questions of ownership of the M&A Database, or the status of the MOU.  These matters may be relevant at some point in time, but given the Joint Case Management / Discovery Plan, and the understanding of the parties reflected in the context of the two or three hearings before the court, a fair amount of the deposition is not terribly enlightening on issues to be taken up between November 17 and 20, other than those focused on above.

Respectfully submitted,

BAKER & McKENZIE LLP

By:      /s/ Brendan D. Cook
    Brendan D. Cook
    *(attorney-in-charge)*
    Texas Bar No. 04721700
    Federal ID # 5030
    Brandon E. Caire
    Texas Bar No. 24064991
    Federal ID # 1812322
    700 Louisiana, Suite 3000
    Houston, Texas 77002
    Tel: (713) 427-5000 / Fax: (713) 427-5099
    brendan.cook@bakermckenzie.com
    brandon.caire@bakermckenzie.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been served on lead counsel of record on November 3, 2014 by electronic mail, electronic filing, facsimile, hand delivery, and/or U.S. certified mail, return receipt requested:

Eric Lipper
HIRSCH & WESTHEIMER
1415 Louisiana
Houston, Texas 77002
elipper@hirschwest.com
Tel: (713) 220-9181 / Fax: (713) 223-9319

*Attorney for Defendant PLS Inc.*

Brandon E. Caire