UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DERRICK PETROLEUM SERVICES, | § § | |
|     *Plaintiff*, | § § | |
| v. | § § | CASE NO. 4:14-cv-01520 |
| PLS, INC., | § § | |
|     *Defendant*. | § § | |

**PLAINTIFF'S SUMMARY OF DEPOSITION
DESIGNATION OF NAVEEN SEETHARAMA**

Plaintiff, Derrick Petroleum Services ("Derrick"), hereby submits Plaintiff's Summary of Deposition Designation of Naveen Seetharama ("Seetharama") and offers the following summary of Plaintiff's Designation of the Deposition Testimony.

**A.     Seetharama Was Hired By Derrick to Perform Valuation Analysis on the Database.**

Naveen Seetharama is an employee of Derrick. He was hired on April 7, 2008 to do Valuation Analysis for the M&A Database (or the "Database"). Seetharama is an Indian citizen who resides in Bangalore, India. Seetharama has a Masters Degree in Commerce from Bangalore University.

Seetharama has significant experience in analyzing and interpreting financial data and other information in a structured manner. He secured this experience during his employment with Thompson Reuters (or its predecessor Reuters), where he worked in the Fundamentals Department. He has also worked as a financial analyst for a company called Capco before joining Derrick.

When Seetharama joined Derrick, there were six to eight total employees that were responsible for working on what is now known as the M&A Database. There are now

approximately thirty (30) employees that analyze transactions and upload information into the Database. These individuals perform job functions such as gathering information, processing it, analyzing it, and then uploading the information into the Database.

The work done in connection with valuation analysis—which may or may not be germane to this proceeding—consists of three parts: 1) getting to know the components of a particular transaction's value; 2) ascertaining the reserves, resources, and production data, as well as contingent resources; and (3) comparing the reserve and production information to other aspects of deal value for the ultimate purpose of determining valuation and content prior to uploading the deal into the Database.

When Seetharama first joined Derrick, he was working mainly on valuation analysis, but his role expanded when Derrick began to develop other products. Ultimately, he was promoted as a product manager in 2009 and has spent the majority of his time working on the M&A Database since then and building a team under him to support that function. He does not currently manage any product other than the M&A Database.

**B.     Coordination with PLS in the Fall of 2009.**

In September of 2009, Seetharama came to Houston to begin coordinating with PLS with respect to the M&A Database. His goal was to categorize existing U.S. deals in the M&A Database for the United States by region and to compare the valuation methodology that was being used by PLS to that which was being used by Derrick on its international platform.

As far as categorization of transactions by region was concerned, there was an effort undertaken to impose geographical categorizations of deals that were covered in the United States, as well as geological categorizations that were collected for unconventional transactions. In addition, there was some communication between PLS and Derrick with respect to the

appropriate method of valuation analysis to apply. Seetharama dealt primarily with Brian Lidsky in that regard.

Seetharama admitted that Lidsky was helpful in working on the geographical clarifications, and that he also helped Derrick on a few occasions. It bears noting that Yashodeep Deodhar had already provided an overview of geographical categories—or what Seetharama characterized as a rough sketch of it—and Lidsky apparently followed up in that regard. To the best of Seetharama's recollection, there was no further substantive contribution made by Lidsky, or by anyone else at PLS, especially in relation to the valuation analysis. There was discussion regarding the methodology used in evaluating M&A transactions that took place in the United States. Testimony confirmed that the current version of the M&A Database—at least to some extent—establishes valuation "on a dollar per acre metric." This is apparently distinguishable from international transactions, which are not only evaluated on a dollar per acre metric. According to Seetharama, though, the analysis of the underlying transaction is essentially the same. In his words, "*the structure is the same, the process is the same except the metric that we generate*."[1] The metrics vary in that the U.S. market is focused on generating the metric for proven reserves, and outside the U.S. market, the metric that is generated is for what was referred to as 2P reserves, which means proved plus probable reserves.

Seetharama seemed to concede that there was some transition in valuation methodology—or at least recognized that U.S. valuations may be done a dollar-per-acre metric. While Seetharama could not recall where he learned to value U.S. based transactions in this way, he testified that Lidsky did not contribute any valuvable knowledge or information concerning

---

[1] Transcript of Naveen Seetharama Deposition Testimony (hereinafter referred to as "Seetharama Dep.") at 21:6-11.

acreage valuation to Derrick.[2] Seetharama also rejected the suggestion that Lidsky (or anyone else at PLS) finalized the structural and format changes to the M&A Database. Instead, he testified that he spent much of his time in Houston categorizing U.S. deals by region, which to the best of his recollection, tracing back over five years now, involved more than 1,000 different transactions.

Seetharama further disputed the notion that he ever looked at or reviewed the historical M&A data that PLS allegedly possessed in 2009.

At the risk of redundancy, there is additional testimony regarding the interplay between PLS and Derrick with respect to work on the M&A Database. Seetharama remains firm in his conviction that the main objective was to prepare a "*U.S. regional value classification and then learn valuation methodology*," to add to what was already being done in India.[3] While Seetharama admitted that there was assistance provided concerning the U.S. regional classification—pursuant to suggestions that were actually made by Derrick, there was little or nothing done with respect to education on the subject of valuation and methodology. Seetharama stated that "*my objective was to categorize all US deals, existing US deals, in the Derrick M&A Database, for adding three more fields, the geography, the geological classification, and then learn[ing] additional methodology valuation [to] enable what we were not doing earlier in India.*" If these things had happened, things would have made the Database better.[4]

---

[2] Seetharama Dep. at 84:5–12; 93:23–94:2.
[3] Seetharama Dep. at 81:3-8.

### C. Valuation Methodology and Composition of the M&A Database.

There was a fair amount of discussion regarding valuation issues. Various questions "asked," or really implied that Lidsky taught Derrick the technique of valuing unproven acreage on U.S. transactions based on the visit Seetharama made in September of 2009. Indeed, there were some e-mails shown to Seetharama (Deposition Exhibits 74 and 75) that outlined some of the background work done, and the discussions that took place. Seetharama rejected the suggestion that these representative e-mails confirmed that PLS taught Derrick how to value domestic M&A transactions. Simply put, the parties basically disagree with the level of information exchanged on the subject of valuation analysis, and whether and to what extent PLS contributed substantive information or educated Derrick in this area. As Seetharama said, this type of methodology is not all that difficult, and it is very basic for any entry level analyst to perform. Indeed, Seetharama disagreed with repeated suggestions that he was not capable of performing the so-called "dollar per acre metric" valuation. There is simply a difference in recollection, and a dispute regarding the nature and extent of the education, if any, provided by PLS regarding valuation methodology. Seetharama also recognized that while there were a lot of e-mails exchanged between the parties, and questions, comments and information transmitted by PLS, that did not equate to the conclusion that Derrick accepted such suggestions or proposals and incorporated them into the Database. Seetharama underscored that although this correspondence and dialogue occurred, Derrick rejected many of the suggestions, and had the final authority to decide what content was included in the M&A Database.

Seetharama also testified regarding the components of the M&A Database. In short, in 2009, the Database was running on a Microsoft Access platform with an online software

---

[4] Seetharam Dep. at 82:2-11.

interface for customers. When the Database was moved to Intuit's Quickbase platform in August of 2010, it presented a different user interface. According to Seetharama, in 2009, the M&A Database contained a U.S. and a Canadian module. The information—or the dataset—was already in inventory; in other words, to quote Seetharama, "[*t*]*hey were all there in one Database,*" but there was apparently some repackaging and segregation of the data resulting in a different "viewpage" that subsequently took place.[5]

Admittedly, there were other changes and other improvements that were made to the M&A Database including the addition of midstream and downstream transactions to the Database. There were other changes that were discussed and/or made such as adding additional subregional classifications, assuring the availability of source documents, providing mapping features, as well as other upgrades or modifications that occurred. Many of these features were discussed with PLS, but Seetharama testified that he personally made many of the changes, or that they were otherwise controlled by Derrick.

**D.    Seetharama's Sole Role Focuses on the M&A Database.**

Seetharama is currently employed as a Senior Manager—or Lead Analyst—at Derrick. That is his sole responsibility. He has no role in relation to marketing or sales responsibilities. Moreover, Seetharama has had no involvement in any way in connection with the Memorandum of Understanding ("MOU") entered into between PLS and Derrick. Although there were many questions concerning the composition of the Database, Seetharama confirmed that Derrick— through Yashodeep Deodhar—makes the final call on every aspect of the Database. Indeed, PLS has no control over what data gets included or does not get included in the Database. Moreover, the Database is updated on a daily basis and on some occasions multiple times a day.

---

[5] Seetharama Dep. at 124:14-125:3.

6

358026-v1\HOUDMS

Seetharama has no involvement in any products other than the M&A Database, including the Exploration Wells Database, Intel Bytes, evaluation services, or otherwise.

Other than in the course of this litigation, no one has ever told Seetharama that PLS has claimed ownership in the M&A Database. His understanding is that Derrick, through Yashodeep Deodhar, is the owner of the same.

In conclusion, Deposition Exhibit 79, which is attached to this summary of deposition, represents an outline that Seetharama prepared and reflects his recollection of what took place on the six to eight week timeframe that he was present in the United States from mid-September 2009 through early November of that year. It details, in summary form, the work that was done between the parties and who made what respective contributions to the Database at that time. The main focus of Seetharama's deposition was focused on the nature and extent of contributions made to the development of the M&A Database pursuant to execution of the MOU, and carrying through the present. As detailed above, such focus was spent on the time that Seetharama spent in Houston between mid-September and early November of 2009. Much of his time and effort was spent on initial coordination of efforts, and for lack of better description, each side getting to know the other at the inception of the relationship. There is no dispute that PLS made suggestions, especially with respect to the structure and appearance of the M&A Database, but there is disagreement regarding the level of contribution made by PLS, especially in the context of valuation analysis. Seetharama was firm in his conviction that Derrick dedicated substantially more resources to this task (as evidenced by the number of analysts that updated the Database on a daily basis), and that Derrick exercised sole control over the actual content of the M&A Database.

**E.     Conclusion**

Last, but not least, it bears noting that Seetharama is an Indian national, and as the transcript shows, there was occasional difficulty in communicating effectively, although counsel for PLS and the witness certainly did their best to work through things to the best of their respective abilities.  English is not Seetharama's first or second language, and as much as any of us might be challenged if the positions were reversed, and we found ourselves immersed in the Indian judicial system, appropriate recognition should be provided to that dynamic.  Certainly the videotape will demonstrate the good faith and earnest efforts that Seetharama brought to bear, as well as the effort on the part of counsel for PLS to indulge any difficulties in that area.

Respectfully submitted,

BAKER & McKENZIE LLP

By:      /s/  Brendan D. Cook
     Brendan D. Cook
     *(attorney-in-charge)*
     Texas Bar No. 04721700
     Federal ID # 5030
     Brandon E. Caire
     Texas Bar No. 24064991
     Federal ID # 1812322
     700 Louisiana, Suite 3000
     Houston, Texas  77002
     Tel: (713) 427-5000 / Fax: (713) 427-5099
     brendan.cook@bakermckenzie.com
     brandon.caire@bakermckenzie.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been served on lead counsel of record on November 3, 2014 by electronic mail, electronic filing, facsimile, hand delivery, and/or U.S. certified mail, return receipt requested:

Eric Lipper
HIRSCH & WESTHEIMER
1415 Louisiana
Houston, Texas 77002
elipper@hirschwest.com
Tel: (713) 220-9181 / Fax: (713) 223-9319

*Attorney for Defendant PLS Inc.*

_____
Brandon E. Caire