**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DERRICK PETROLEUM SERVICES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-1520 |
| | § | |
| PLS, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER DENYING RECONSIDERATION**

PLS has filed a motion to amend or make additional findings, (Docket Entry No. 172), and a motion to alter or amend the court's final partial judgment and order approving the parties' agreement pending appeal, (Docket Entry No. 173). Derrick responded to both motions. (Docket Entry No. 190). PLS's motions challenge the court's findings and conclusions, set out in the December 31, 2014 memorandum and opinion, (Docket Entry No. 113), that:

(1) PLS and Derrick did not form a partnership;
(2) Derrick did not contribute all or part of ownership in or title to its Derrick Database as it existed before 2009 or after it was marketed as the Derrick/PLS Database, to the parties' business venture or to PLS;
(3) the MOU expired on October 3, 2014; and
(4) Derrick is the sole owner or the Derrick Database and what was marketed from 2009 to 2014 as the jointly branded Derrick/PLS Database.

PLS asks the court to vacate these findings and conclusions and instead find that Derrick and PLS formed a partnership, that Derrick contributed its Database to that partnership, and that the Derrick/PLS Database is owned by the Derrick/PLS partnership. (Docket Entry No. 173 at pp. 2–3). PLS also asks the court to vacate its ruling that the MOU ended on October 3, 2014, and to reserve that issue for a future jury trial on the remaining issues. (*Id.*).

1

PLS first moved for reconsideration in January 2015. (Docket Entry No. 119). The issues and arguments PLS raised in that motion and its subsequent briefing, as well as in the present motions, were discussed at a hearing on April 9, 2015. (Docket Entry No. 146). The court rejected PLS's arguments for the reasons stated on the record in the April hearing. (*Id.*). PLS's pending motions to alter or amend the court's partial final judgment and to amend or make additional findings renew and reurge the arguments presented in January 2015. Based on the record evidence and the governing law, PLS's motions are denied.

The crux of PLS's motions is the argument that Derrick and PLS formed a partnership. (Docket Entry No. 172 at p. 3). The Texas Revised Partnership Act defines a partnership as "an association of two or more persons to carry on a business for profit as owners," TEX. REV. CIV. STAT. art. 6132b-2.02(a), and identifies five factors that show a partnership:

> (1) the receipt or right to receive a share of profits of the business;
> (2) the expression of an intent to be partners in the business;
> (3) participation or the right to participate in the control of the business;
> (4) sharing or agreeing to share:
>     (A) losses of the business; or
>     (B) liability for claims by third parties against the business; and
> (5) contributing or agreeing to contribute money or property to the business.

*Id.* at art. 6132b-2.03(a). Because the statute "contemplates a less formalistic and more practical approach to recognizing the formation of a partnership," courts consider the totality of the circumstances; no one factor is determinative. *Ingram v. Deere*, 288 S.W.3d 886, 895 (Tex. 2009). The party asserting that a partnership exists has the burden of proof. *See Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 585 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

As to the first factor, the court found that the evidence showed that PLS and Derrick shared

revenues but not profits. The court also found that the evidence did not show the second factor. The court found, and PLS agrees, that when the parties began their business relationship, they intended to form a partnership and expressed that intent in the MOU and in statements to third parties. (Docket Entry No. 113 at pp. 11–12, 25–27). The record showed, however, that the parties attempted to formalize a partnership and to conduct themselves as a partnership, and failed. The record shows that within a short time after beginning to do business together, the parties failed to take concrete actions demonstrating the intent to become partners and instead conducted themselves in ways inconsistent with finding that intent. The court found that the evidence failed to show the third factor, participating in or having the right to participate in controlling the business, or the fourth factor, sharing or agreeing to share losses or liability for third-party claims. PLS disagrees. As to the fifth factor, the court found some evidence that the parties had contributed property to their shared business; PLS argues that the court erred in finding that the evidence of this factor was limited.

As to the first factor, the evidence that PLS and Derrick shared revenues but not profits undercut the existence of a partnership. Under Texas law, "the receipt of gross revenue is not profit sharing." *Ingram*, 288 S.W.3d at 899. PLS argues that the parties shared profits because they shared revenues and each bore the expenses incurred in carrying out its separate responsibilities under the MOU. (Docket Entry No. 172 at pp. 7–8). PLS relies on cases stating that "sharing equally in revenues can equate to sharing in profits when expenditures are also equally shared." *Brown v. Keel*, No. 01-10-00936-CV, 2012 WL 760933, at *5 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

The cases make clear that sharing revenues without first making deductions to cover the business's expenses is not profit-sharing. *See Ingram*, 288 S.W.3d at 899. The evidence shows that

Derrick and PLS divided the revenues obtained from marketing the Database, with no deduction for expenditures. PLS argues in its motion that there were no expenses to deduct because no expenses were shared. (Docket Entry No. 172 at p. 8). At trial, PLS argued that there were some joint expenses. Ronyld Wise testified that one of those joint expenses was an origination fee for Brian Lidsky that PLS and Derrick shared. PLS also argued that it sometimes paid costs that it believed Derrick should have paid, either in whole or in part—including David Harris's consulting fee and hotel stays for Derrick employees in Houston—without receiving reimbursement. (Docket Entry No. 109, Bench Trial Tr., Vol. 2, pp. 86, 237–40). Wise testified that PLS sometimes deducted a portion of what it considered either joint costs or Derrick's costs from the revenue amount before distributing Derrick its share. But when PLS did make deductions from Derrick's share of the revenue, Derrick objected that the MOU did not permit PLS to deduct expenses before distributing subscription revenue. (Docket Entry No. 108, Bench Trial Tr., Vol. 1, pp. 214, 218; Docket Entry No. 109, Bench Trial Tr., Vol. 2, pp. 265–70). And even if these costs were shared expenses, the evidence did not show that PLS's deductions were enough to cover these expenses and were done before distributing revenues. The business's expenses were neither consistently deducted from revenue nor equally shared.

As to the second factor, the MOU described the parties' intent to develop a relationship as "joint venture partners" to market the Database in North America. (Docket Entry No. 1, Ex. 1). Emails between Derrick and PLS before and after they signed the MOU referred to their relationship as a partnership. (PLS Exs. 11, 13, 32; Derrick Exs. 13, 35, 36, 38; Docket Entry No. 109, Bench Trial Tr., Vol. 2, pp. 240–41; Docket Entry No. 110, Bench Trial Tr., Vol. 3, pp. 65–66). Emails to potential and existing customers also referred to Derrick and PLS as partners. (PLS Exs. 17, 22, 39, 85, and 86; Derrick Exs. 19, 20, 22). But statements that the parties are partners are less

probative of intent to form a partnership when, as here, the parties refuse or fail to take concrete actions consistent with a partnership. *See Ingram*, 288 S.W.3d at 901; *Westside Wrecker Serv., Inc. v. Skafi*, 361 S.W.3d 153, 170 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Derrick and PLS jointly branded and marketed the Derrick/PLS Database, but they did not register an assumed name, sign legal documents on behalf of the business, file taxes as partners, obtain partnership insurance, give each other signature authority on their individual bank accounts, or establish new bank accounts for the business. They negotiated to form a partnership and failed to do so. They attempted to, or prepared to, or did compete with each other during the existence of the relationship. There was limited and conflicting evidence of this factor.

As to the third factor, PLS argues that the court erred in finding that the parties did not share control. The court found and concluded that PLS and Derrick each controlled its own business, including part of the business activities relating to the Database. There were no shared responsibilities or areas of responsibility that both companies controlled. The evidence showed that there was no Derrick-designated responsibility that PLS had a right to control, and no PLS-designated responsibility that Derrick had a right to control. *See, e.g.*, *Westside Wrecker*, 361 S.W.3d at 171–72 (The court found that none of the parties had a right to participate in controlling the business because each "ran its own business," operating as four different companies rather than as a unified partnership. None of those four companies had "any right to make executive decisions that extended beyond the operation of their own individual compan[ies].").

PLS argues that it had control over some decisions that affected Derrick, including training Derrick employees, deciding how to market the Database, setting subscription pricing, and distributing revenue from subscriptions PLS signed. (Docket Entry No. 172 at pp. 6–7). PLS relies

on *Rojas v. Duarte*, 393 S.W.3d 837, 843 (Tex. App.—El Paso 2012, pet. denied), but in that case, other evidence showed control. In that case, both parties had access to the business's books, checkbooks, and joint bank accounts that the parties had created for their shared business. *Id.* And there was no evidence that Rojas and Duarte had separate responsibilities for assigned tasks and lacked control over the other party's distinct responsibilities, nor any evidence that the parties lacked shared responsibilities. This is far different from the arrangement between Derrick and PLS. *Id.*

The evidence shows that PLS's marketing decisions related to its own business and its own assigned responsibilities for marketing the Database under the MOU. The evidence does not show that PLS had "unilateral" control over distributing revenues to Derrick. Instead, the evidence presented at the bench trial showed that the MOU established the way in which PLS was to divide and distribute the North American subscription revenues. The evidence also showed that Derrick objected when PLS made deductions or changes to Derrick's revenue share stipulated in the MOU. (Docket Entry No. 108, Bench Trial Tr., Vol. 1, pp. 214, 218; Docket Entry No. 109, Bench Trial Tr., Vol. 2, pp. 265–70). PLS was in charge of distributing the revenue it collected from its North American subscription sales, but the evidence did not show that PLS controlled all of the revenue Derrick obtained from the Database, nor all of the money the parties used for Database expenses. And training Derrick's employees, at Derrick's request, does not rise to the level of control over personnel and business decisions described in the cases. *See Ingram*, 288 S.W.3d at 901 (citations omitted) (stating that relevant factors include the right to write checks on behalf of the business, control over and access to the business's books, and the receipt and management of the business's assets and money).

The court also found that Derrick and PLS did not share or agree to share losses or liability

for third-party claims, the fourth factor. (Docket Entry No. 113 at pp. 29–30). PLS argues that Ronyld Wise's testimony showed the parties did share losses. (Docket Entry No. 172 at p. 8). Wise testified that PLS paid for some costs that Derrick should have paid for and that the parties shared some expenses. (Docket Entry No. 109, Bench Trial Tr., Vol. 2, pp. 86, 237–40). But Wise did not testify that the parties agreed to share net losses or liability for third-party claims against the business. The parties each bore whatever losses resulted from their own assigned areas of responsibility under the MOU. They had no joint areas of responsibility. The documents showed that PLS had full responsibility for any losses or claims resulting from the subscription contracts it, and only it, entered into with third-party subscribers. (*Id.* at pp. 280–82). Neither Wise's testimony nor other record evidence showed that this factor was present.

As to the fifth factor, the court found that the parties contributed time and expenses to the business, as well as the use of, or access to, their intellectual property. But the court found and concluded that this factor was present only to a limited extent because neither Derrick nor PLS conveyed an ownership interest in their intellectual property to the other or to the Database business.

PLS argues that Derrick contributed the Database that it owned in 2009 to the parties' joint business, and that PLS contributed its Legacy Database. (Docket Entry No. 172 at p. 10). The MOU required Derrick to "provide" its existing Database platform to PLS during the MOU term. (Docket Entry No. 1, Ex. 1). The fact that the MOU had an expiration date is inconsistent with finding that Derrick intended to grant PLS an ownership interest in the Database that would survive the MOU. The MOU also required both parties to "provide" services, including marketing, client invoicing, customer support, training, and ongoing operations. Neither PLS nor Derrick argued that "provide" reflected an intent to convey an ownership interest in the products or methods used to

7

perform these services.  The consistent meaning of the word "provide" in the MOU is "furnish" or "make available," not "convey ownership to, in, or of."  (Docket Entry No. 113 at p. 31).  PLS does not explain why the word "provide" should mean different things in the same document.

Only two of the five partnership factors courts consider were present, and both were present only to a limited degree.  PLS has not shown a basis for the court to alter its findings and conclusions that the parties did not form a partnership.  Nor has PLS shown a basis to set aside the court's finding and conclusion that Derrick did not convey the Database to PLS or to the parties' joint business.  As discussed both above and at greater length in the court's findings of fact and conclusions of law, the evidence did not show that Derrick intended to convey an ownership interest in its Database.

Finally, PLS argues that the court should not have decided whether the MOU ended on October 3, 2014 because the parties reserved the question whether the MOU's exit mechanism was triggered for the jury trial.  (Docket Entry No. 172 at p. 10).  The court's finding and conclusion that the MOU ended by its terms no later than October 3, 2014 does not prevent either party from arguing that the other party triggered the MOU's exit mechanism before that date.

PLS's motions to alter or amend the court's final partial judgment, (Docket Entry No. 173), and to amend or make additional findings, (Docket Entry No. 172), are denied.

SIGNED on August 7, 2015, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge