IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DERRICK PETROLEUM SERVICES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1520 |
| | § | |
| PLS, INC., | § | |
| | § | |
| Defendant. | § | |

## JURY INSTRUCTIONS

MEMBERS OF THE JURY:

You have now heard all of the evidence in this lawsuit between Derrick Petroleum Services and PLS, Inc. I will now instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

I will first give you general instructions that apply in many cases, including this one. Then I will give you more specific instructions that apply to this case in particular. Finally, I will give you instructions about deliberating to a verdict.

### General Instructions

Consider these instructions as a whole and in context. Do not consider any instruction to be more important than others, and do not take any instruction out of context. Your duty as jurors is to follow the law that I give you in these

1

instructions. You, the jurors, are the sole finders of fact. But in finding those facts, you must apply the law as I give it to you in these instructions, regardless of any opinion you may have as to what the law ought to be. If I have given you the impression during the trial that I favor either party, or that I have an opinion about the facts of this case, you must disregard that impression.

All parties are equals before the law and must be treated as equals before the law in a court of justice. The size or locations of the companies or the fact that one is based overseas is irrelevant. Your duty is to make fair and impartial decisions based only on the evidence and law presented to you here. Our system does not permit jurors to be influenced by bias, prejudice, sympathy, or public opinion. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as it is given to you, and reach a just verdict, regardless of the consequences.

The verdict form, which I will explain in detail later, tells you to answer questions about the factual disputes in the case. Base your answers on the facts as you find them. Do not first decide who you think should win and then answer questions accordingly.

The evidence for you to consider consists of the witnesses' testimony and the exhibits that I have admitted into evidence. You may also consider fair inferences you choose to draw from the facts you find to be proven. Lawyer

statements and arguments are not evidence and are not instructions on the law. Although what the lawyers say is not evidence, you may consider their statements and arguments in light of the evidence and determine whether it supports the arguments. Juror notes taken during a trial are not evidence. They are only aids to a juror's memory of the evidence. If you took notes and your memory of the evidence differs from your notes, rely on your memory and not the notes. If you did not take notes, rely on your own independent memory of the evidence and do not be unduly influenced by any other juror's notes.

Your fact findings and your answers to the questions you are asked must be based on a preponderance of the evidence. This means the greater weight and degree of credible evidence before you. To establish a fact by a preponderance of the evidence means to prove that fact is more likely true than not true. In determining whether a fact has been proven by a preponderance of the evidence, you may consider all of the evidence, regardless of which party brought it to you. Derrick has the burden of proving some of the claims by a preponderance of the evidence, and PLS has that burden as to other claims. Pay close attention to the instructions and questions on which party has the burden on which claim.

Facts may be proven by direct evidence, such as testimony of an eyewitness. Facts may also be proven by indirect or circumstantial evidence, which is evidence that proves a fact from which you can logically conclude that another fact exists.

Consider both direct and circumstantial evidence in finding the facts and arriving at your answers from all the evidence.

Witness credibility or truthfulness is for you to decide. In determining credibility, you may consider a wide range of factors, including each witness's demeanor, the consistency or inconsistency of the witness's answers to questions, and the witness's feelings, prejudices, or biases. In determining the weight to give to a witness's testimony, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at trial. A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

Do not decide this case by merely counting the number of witnesses who have testified about a fact. The testimony of a single witness can prove any fact,

even if a greater number of witnesses testified to the contrary, if after considering all the evidence, you believe that witness.

You heard the testimony of David Lerman, who expressed opinions on Derrick's damages. When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## Specific Instructions

**Instructions on the Nature of the Case**

In 2009, Derrick and PLS entered into a written agreement to work together to develop and market an online Database consisting of information on oil and gas

mergers and acquisition deals around the world. The written agreement was titled the "Memorandum of Understanding." Under the Memorandum of Understanding, Derrick and PLS would sell subscriptions to the Database to customers in the North American market, with an added goal of moving beyond that market to international customers. Derrick would provide existing products, including the Database it had developed starting in 2006, and ongoing operations support. PLS would provide market penetration, product enhancement, and its client relationships.

During the course of this trial, you heard attorneys and witnesses refer to the "Oil and Gas Mergers and Acquisition Database." Derrick created its initial version of the Database beginning in 2006, and it has evolved over time to integrate new information as it became available. By 2009, when the Memorandum of Understanding began, Derrick had made various improvements to its Database. This is generally referred to as the "Pre-MOU Derrick Database."

Derrick and PLS sold subscriptions to the Database during their relationship under the Memorandum of Understanding from October 2009 until May 2015. This is generally referred to as the "MOU Database."

Derrick has, since 2015, when the Memorandum of Understanding ended, sold a version of the Database. This is referred to as the "Post-MOU Derrick Database." Derrick owns the "Pre-MOU Derrick Database," the "MOU Database"

sold from 2009 to 2015, and the "Post-MOU Derrick Database." The fact of Derrick's ownership has been determined and is not an issue you will need to resolve in this trial.

PLS created its own database after the parties' relationship ended in 2015. This is referred to as the "PLS Database." The "Post-MOU Derrick Database" and the "PLS Database" are currently being sold as competing products.

Both parties allege that the other breached the written Memorandum of Understanding. Derrick claims that PLS breached the Memorandum of Understanding requirements on co-branding, made false statements of fact in its advertisements about the MOU Database, and made misleading statements about the MOU Database that caused customers to be confused about its ownership and creation, causing Derrick damages.

PLS claims that Derrick breached the Memorandum of Understanding by failing to disclose 14 international sales of MOU Database subscriptions generated from a PLS lead, and that PLS is entitled to at least a 15% share of those subscription sales revenues. PLS further alleges that Derrick and PLS modified the Memorandum of Understanding to increase PLS's share from 15% to 50% of revenues from the 14 international subscription sales that PLS alleges were generated from PLS leads. Derrick denies that any of these 14 sales was from a PLS lead, and denies any modification of the written Memorandum of

Understanding to pay 50% rather than 15% for international subscription sales if PLS had provided the lead. PLS denies that it knew of these 14 sales when Derrick made them. Derrick asserts that it informed PLS when the sales were made or shortly thereafter and that PLS did not object.

Derrick seeks $11,018,672 in damages, representing what it claims to be the money it lost and will lose because of customer confusion due to PLS's failure to co-brand as required by the Memorandum of Understanding or false advertisements or misleading statements about the MOU Database. PLS seeks $611,205 in damages, representing what it claims to be the money it would have received had it received 50% of the revenues from the 14 international subscription sales it claims were based on PLS leads.

**Instructions for Jury Question No. 1**

You are asked in Jury Question No. 1 whether Derrick has proved, by a preponderance of the evidence, that PLS breached the Memorandum of Understanding's co-branding requirements. A contract is breached when one party fails to perform an act or obligation that the contract requires, resulting in damages to the other party.

To find that PLS breached the Memorandum of Understanding as Derrick alleges, you would have to find that Derrick has proved, by a preponderance of the evidence, that PLS failed to abide by the Memorandum of

Understanding's co-branding requirements, and that the failure proximately caused Derrick damages. You are instructed that "proximately caused" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. The event must be a direct result or a reasonably probable consequence of the cause. There may be more than one proximate cause of an event.

The Memorandum of Understanding states that PLS shall provide:

"1. A full license to PLS' brand and corporate name for use in marketing E&P database products."

The Memorandum of Understanding also states that PLS and Derrick have certain joint agreements. They include the following:

"Jointly, PLS and Derrick agree to:

1. Provide E&P Database Services via a co-branded website under respective companies main domains
. . .
8. The Parties agree to issue all Press Releases, Market Updates and Research Announcements related to the Derrick/PLS, Inc. E&P Databases under a joint Derrick and PLS brand."

**Instructions for Jury Question No. 2**

You are asked in Jury Question No. 2 whether you find that PLS has proved, by a preponderance of the evidence, that Derrick waived PLS's compliance with the Memorandum of Understanding's co-branding requirements. You are instructed that waiver is the intentional surrender of a known right or intentional

conduct inconsistent with claiming a known right.

**Instructions for Jury Question No. 3**

Jury Question No. 3 asks you to determine whether Derrick has proved, by a preponderance of the evidence, that during the period the Memorandum of Understanding was in effect, PLS made false advertisements about the MOU Database. For you to answer "yes" to this question, you must find that Derrick has proved, by a preponderance of the evidence that: PLS made one or more false statements of fact in advertisements about the MOU Database; and one or more of the false advertisements proximately caused Derrick damages.

In answering Jury Question No. 3, you are instructed that a false statement of fact is one that can be empirically verified to be true or false, viewed in the context in which it appears. If PLS has made literally false statements, Derrick does not need to demonstrate that consumers or potential consumers were actually misled.

The instruction on the meaning of "proximate cause" from page 9 applies.

**Instructions for Jury Question No. 4**

You are asked in Jury Question No. 4 whether Derrick has proved, by a preponderance of the evidence, that PLS made misleading statements about the MOU Database that actually caused customer confusion about the ownership and creation of the Database.

For you to answer "yes" to this question, you must find that Derrick has proved, by a preponderance of the evidence, that:

1. PLS made one or more misleading statements about the MOU Database;

2. the statement either deceived, or had the capacity to deceive, a substantial segment of potential consumers;

3. the deception was likely to influence the consumers' purchasing decision; and

4. one or more of the misleading statements proximately caused Derrick damages.

A statement is misleading if it conveys a false impression, viewed in the context in which it appears, and actually misleads a consumer. If PLS made an ambiguous or misleading statement, Derrick must prove by a preponderance of the evidence that consumers were actually misled. A statement can be misleading even if it is literally true or ambiguous.

The instruction on the meaning of "proximate cause" from page 9 applies.

**Instructions for Jury Question No. 5**

You are asked in Jury Question No. 5 whether PLS proved by a preponderance of the evidence that Derrick waived any claims that PLS had made false advertisements or misleading statements about the MOU Database, if any. You are instructed that waiver is the intentional surrender of a known right or

intentional conduct inconsistent with claiming a known right.

**Instructions for Jury Question No. 6**

You are asked in Jury Question No. 6 whether PLS has proved, by a preponderance of the evidence, that one or more of the following 14 international sales of MOU Database subscriptions was generated from a PLS lead:

- Mitsui
- Gazprom
- Energy Intelligence
- Ernst & Young
- Data
- Total
- Centrica
- Ophir
- Marakon, also known as Charles River Associates
- PricewaterhouseCoopers
- Mirach
- Rheinisch-Westfälisches Elektrizitätswerk
- Statoil
- Rystad

You must answer "yes" or "no" to each part of this question, indicating for each of the 14 international subscription sales whether you find that it was generated by a PLS lead.

**Instructions for Jury Question No. 7**

You are asked in Jury Question No. 7 whether PLS has proved, by a preponderance of the evidence, that Derrick breached the Memorandum of Understanding by failing to share the revenues from one or more of the 14 international sales of the MOU Database subscriptions you identified in Jury

Question No. 6 as having been generated by a PLS lead. A contract is breached when one party fails to perform an act or obligation that the contract requires, resulting in damages to the other party.

The Memorandum of Understanding states:

"7. Regarding Derrick's sales of E&P database outside of North America generated via a lead supplied by PLS, Inc. . . . PLS, Inc. will be entitled to 15% of sales."

You must answer "yes" or "no" to each part of this question, indicating for each sale whether you find that Derrick failed to share revenues with PLS for one or more of the 14 international subscription sales that you identified in Jury Question No. 6 as having been generated from a PLS lead, if any. If you find that Derrick failed to share revenues with PLS for any of the sales you identified in Jury Question No. 6, then go to Question No. 8.

**Instructions for Jury Question No. 8**

You are asked in Jury Question No. 8 whether you find that Derrick has proved, by a preponderance of the evidence, that PLS waived any right to share in the revenues from one or more of the 14 international subscription sales generated from a PLS lead, if any. You are instructed that waiver is the intentional surrender of a known right or intentional conduct inconsistent with claiming a known right.

**Instructions for Jury Question No. 9**

You are asked in Jury Question No. 9 whether PLS has proved, by a

preponderance of the evidence, that the parties modified the Memorandum of Understanding's provision stating that Derrick would pay PLS 15% of the revenues from Derrick's international sales of subscriptions to the MOU Database generated from a PLS lead. You are asked whether the parties, by their conduct, modified this provision to increase the percentage from 15% to 50%.

To find that PLS has proved that the Memorandum of Understanding language was modified by the parties' conduct, you would have to find each of the following:

(1) PLS and Derrick had a meeting of the minds, that is, both parties had the same understanding on the change; and

(2) PLS provided added value beyond what the Memorandum of Understanding already required it to do.

In determining whether there was a meeting of the minds, you must decide whether a reasonable person would conclude, based on what the parties did and said, that the parties agreed to modify the contract. You cannot consider the parties' subjective states of mind, but instead what they said and did. In determining whether a meeting of the minds, if any, was supported by added value by PLS, you must find that PLS provided something more to Derrick than it was obligated to provide under the Memorandum of Understanding, in exchange for an increased share of the revenues from the 14 international subscription sales PLS

claims were generated from a PLS lead.

## Instructions for Questions on Damages

**Instructions for Jury Question No. 10**

Jury Question No. 10 asks you to determine the amount of damages proximately caused to Derrick by one or more of these acts, if any. I am instructing you on damages not because I think that you should find that Derrick is entitled to them, but only so that you will have guidance in the event you decide that PLS breached the parties' Memorandum of Understanding or made false advertisements or misleading statements and caused damages to Derrick.

If so, then you must determine an amount that is fair compensation for those damages. These are compensatory damages, intended to make Derrick whole—that is, to compensate Derrick for the damage, if any, that it has suffered as a result of PLS's acts. The damages amount is the amount Derrick proved by a preponderance of the evidence that will place Derrick in the position it would have been in if the Memorandum of Understanding's requirements had been properly performed or PLS had not made false advertisements or misleading statements. Factors you may consider are:

- Derrick's lost profits on lost sales, which consist of the revenues Derrick would have earned but for PLS's failure to co-brand as the Memorandum of Understanding required or false advertisements or misleading statements;

- PLS's profits, if any, resulting from not co-branding as the Memorandum of Understanding required or making false advertisements or misleading statements; and

- Derrick's loss of goodwill.  Goodwill is consumer recognition.  In determining loss of goodwill, you should compare the value of Derrick's goodwill before any failure to co-brand or false advertising or misleading statements with the value of Derrick's goodwill after the failure to co-brand or false advertising or misleading statements.

If you decide to award Derrick compensatory damages, you may hold PLS liable only for damages that were foreseeable when the Memorandum of Understanding was entered or the alleged false advertisements or misleading statements were made.  Foreseeable damages are those that a reasonable person might anticipate.  In determining what is reasonably foreseeable, you should consider the nature of the Memorandum of Understanding, the nature of the parties' business, their prior dealings, and all other circumstances related to the contract and known to PLS.

If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  An award of damages may not be speculative.  On the other hand, the law does not require that

Derrick prove the amount of its losses with mathematical precision, but with as much definiteness and accuracy as the circumstances permit. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts and circumstances in evidence.

**Instructions for Jury Question No. 11**

Jury Question No. 11 asks you to determine the amount of damages proximately caused to PLS. I am instructing you on damages not because I think that you should find that PLS is entitled to them, but only so that you will have guidance in the event you decide that Derrick breached the parties' Memorandum of Understanding as to one or more of the 14 international sales, and that the breach caused damages to PLS.

If you found, in answering any part of Jury Question No. 7, that Derrick made one or more of the 14 international Database subscription sales from a PLS lead and failed to pay PLS any of the subscription revenues from those sales, and you did not find, in answering any part of Jury Question No. 8, that PLS waived any right to share in those revenues, then under the Memorandum of Understanding as written, Derrick owes PLS a 15% share of the subscription sales revenues. For you to find that Derrick owes 50% for one or more of the sales, as PLS alleges, you must have answered "yes" to Jury Question No. 9, finding that PLS proved that the parties modified the Memorandum of Understanding to

17

increase the amount from 15% to 50%.

## Final Instructions on Deliberations and Verdict

When you go to the jury room to begin deliberating, you should first select a foreperson to preside over your deliberations and speak for you here in the courtroom. Your verdict must represent the considered judgment of each juror. It is your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case. Remember that you are not partisans. You are the judges of the facts. Your sole interest is to seek the truth from the evidence in the case and the instructions on the law.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. A verdict form has been prepared for your convenience. The form has space for your answers to the specific jury questions. You will take the verdict form to the jury room. When you have reached an agreement as to your unanimous answer to each of the questions, your foreperson will fill the answers in on the verdict form, sign and date it, and return to the courtroom.

If you need to communicate with me during your deliberations, your foreperson should write the message or question in a written note, sign it, and pass the note to the court security officer who will be outside the jury room. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

SIGNED on December 13, 2017, at Houston, Texas.

_____
Lee Rosenthal
Chief United States District Judge